**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

KEPLER PROCESSING COMPANY, LLC,

        Plaintiff,

v.                              CIVIL ACTION NO. 5:08-cv-00040

NEW MARKET LAND COMPANY and
ROAD FORK DEVELOPMENT COMPANY, INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion to Compel Arbitration [Docket 9]. Plaintiff commenced the instant action on January 16, 2008, seeking a declaratory judgment from this Court requiring the parties to resolve an underlying dispute via arbitration, as set forth in a lease agreement. (Docket 1 at 12.) In the alternative, Plaintiff seeks a declaratory judgment in its favor on the underlying dispute. (Docket 1 at 13.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is greater than $75,000, exclusive of interest and costs, and the case is between citizens of different states.

*I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Plaintiff is the owner of a coal preparation plant located in Wyoming County, West Virginia. The land on which the plant is located is owned by Georgia-Pacific Corporation (Georgia-Pacific)[1]

---

[1] Georgia-Pacific's successor-in-interest is WPP, LLC, however, in the interest of continuity, the Court will continue to refer to the owner of the land as Georgia-Pacific.

and also includes a coal mine. The coal mine has not been active since 1981. On August 25, 1997, Georgia-Pacific entered into a surface lease agreement with Plaintiff and a coal mine lease agreement with National Mines Corporation (National Mines). The same day National Mines executed the coal mine lease agreement with Georgia-Pacific, National Mines assigned its lease to Defendant New Market Land Company (New Market), which later subleased a portion of its interest to Defendant Road Fork Development Company (Road Fork) on December 22, 2004.

Plaintiff's surface lease grants it "the sole and exclusive right and privilege of using the Leased Premises for all activities directly or indirectly related to the operation and maintenance of a coal preparation plant and all necessary appurtenances thereto." (Docket 10 at 3.) National Mines' coal mine lease grants it "the sole and exclusive right and privilege of prospecting or exploring for and mining [coal located on the premises]." (*Id.*) Both leases include language that binds the parties to certain interdependent terms and conditions. For example, Section 12 of the surface lease mandates that coal mined pursuant to the coal mine lease is to be cleaned and processed by the surface lessee at the preparation plant. In exchange for this service, the coal mine lessee must compensate the surface lessee and must not "unreasonably interfere" with the surface lessee's operation of the processing plant. (Docket 10 at 4.)

Additionally, and particularly relevant to this case, both the surface lease and the coal mine lease include an arbitration provision. The provision is identical in both agreements and reads as follows:

> In the event of any disputes, claims and other matters in question between Georgia-Pacific and [the lessee] arising out of the terms and conditions of this Lease and the performance of either party hereunder, Georgia-Pacific and [the lessee] agree to resolve such matter in the following manner:

2

    a)     The parties shall attempt in good faith to resolve such matter promptly by negotiation between senior executives who have authority to settle the controversy and who do not have direct responsibility for administration of this Contract.

    b)     The disputing party shall give the other party written notice of any dispute not resolved in the normal course of business. Within 15 days after receipt of the notice, the receiving party shall submit to the other a written response. The notice and response shall include: (a) a statement of each party's position and a summary of the evidence and arguments supporting its position, and (b) the name and title of the senior executive who will represent that party. The senior executives shall meet for negotiations at a mutually agreed time and place within 30 days of the date of the disputing party's notice and thereafter as often as they reasonably deem necessary to exchange relevant information and to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored. All negotiations pursuant to this paragraph are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

    c)     If the matter has not been resolved within 60 days of the date of the disputing party's notice, or if the receiving party will not meet within 30 days, then such matter will be settled by an arbitration board of three members, whose majority decision shall be final and binding upon Georgia-Pacific and [the lessee]. One member shall be selected by Georgia-Pacific, one by [the lessee], and the third member shall be selected by the first two. The selection of the arbitration panel shall be commenced not later than 30 days after either party has requested arbitration and completed with due and reasonable diligence.

    d)     All deadlines specified in this Paragraph may be extended by mutual agreement. The procedures specified in this Paragraph shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this Lease, but shall not prohibit either party from enforcing the rights and obligations contained in the "Indemnity" Paragraph, including filing suit in a court of competent jurisdiction.

(Docket 9-2 at 11; Docket 9-3 at 14.)

In November 1997 and again in February 2005, Defendants notified Plaintiff that they wished to exercise their rights under the coal mine and surface leases to require Plaintiff to process, transport, and store between 500,000 and 1,500,000 tons of coal per year. In response to these

notifications, Plaintiff stated by letter to Defendants that a number of disputes over contractual terms needed to be resolved before performance could commence. In fact, despite two years of negotiation between the parties, Plaintiff contends that the parties "have failed to reach an agreement on their respective duties and obligations under the [s]urface [l]ease, and have failed to reach [an] agreement on the manner in which th[e] dispute shall be resolved." (Docket 10 at 7.) In an attempt to resolve this dispute, Plaintiff filed the instant complaint seeking a declaratory judgment that the parties are required to submit to arbitration on this matter or, in the alternative, a declaratory judgment that it is not required to transport and store the coal as a part of the surface lease. Plaintiff then filed the instant Motion to Compel Arbitration [Docket 9] on March 13, 2008, which is now ripe for the Court's review.[2]

## II. APPLICABLE LAW

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, entrusts United States district courts with the power to compel arbitration in cases where a party has failed to abide by a valid arbitration clause.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [of the United States Code], in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

---

[2] The motion has been fully and timely briefed by both parties. The Court appreciates the thorough research and clear presentation of the issues demonstrated in the briefs.

9 U.S.C. § 4. To prevail on a motion to compel arbitration, the party seeking to arbitrate bears the burden of showing: "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate." *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981) (en banc).

When construing the scope of an arbitration agreement, a court is required to apply "general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA.] [Further,] due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). "[T]he district court must first . . . engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (citations and quotation marks omitted). "Once the court determines that a claim falls within the scope of an arbitration provision, the court has no authority to consider the merits of the claim, even if it appears to be frivolous, and must order the claim to arbitration." *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 634 (S.D. W. Va. 2001) (Copenhaver, J.) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Although it is generally true that a party cannot be bound to the terms of a contract that the party did not sign, "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). One manner by which a nonsignatory may be

5

bound to the terms of a contract is estoppel. "[T]he doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* at 418.

### III. ANALYSIS

Defendants do not contest that they have refused to submit to arbitration. Rather, Defendants assert as bases for their refusal: (1) that Plaintiff has failed to identify a good faith dispute that merits arbitration; (2) that Georgia-Pacific is an indispensable party to the case and that Plaintiff's failure to join it precludes arbitration; and (3) that the dispute is outside of the scope of the arbitration agreement. The Court addresses each of these issues in turn.

*A.   Good Faith Dispute*

Defendants contend that Plaintiff has failed to identify a good faith dispute that requires arbitration. In support of this contention, Defendants cite to *Hinkle v. N. River Ins. Co.*, 75 S.E. 54 (W. Va. 1912). In *Hinkle*, an insurance company moved to compel arbitration in a dispute with its insured regarding the amount of loss sustained when the insured's home was destroyed by a fire. *Id.* at 55. The Supreme Court of Appeals of West Virginia declined to compel arbitration, however, because the amount of loss was governed by statute, leaving no good faith dispute to arbitrate. *Id.* at 56-57. Defendants further cite to a number of cases – all decided prior to 1987 and none binding on this Court – for the proposition that a court must find the existence of a good faith dispute before submitting a case to arbitration. Defendants next point to a number of statutes and cases, both from West Virginia and from other coal-mining states, that purport to define the term "process" that forms the basis of the underlying dispute. Defendants assert that, because the term "process" is thoroughly

6

defined in these statutes and cases, Plaintiff "cannot feign ignorance of the common understanding and usage of the terms" of the lease agreements. (Docket 11 at 8.)

Although *Hinkle* is still good law in West Virginia, the court's holding is undermined by the more recent United States Supreme Court holding in *AT&T Techs.* that "a court is not to rule on the potential merits of the underlying claims[,]" even if that claim is frivolous. 475 U.S. at 649. Here, by agreeing to the arbitration clause, the parties have expressed an intent that a determination of the definition of the term "process" be left to an arbitration board. Thus, under *AT&T Techs.*, having determined that the parties have consented to arbitration, the Court is not permitted to determine whether the definition of "process" is unambiguous.[3]

Moreover, even absent the Supreme Court's holding in *AT&T Techs.*, Plaintiff has presented evidence of a good faith dispute. Plaintiff has asserted, and Defendants do not dispute that assertion, that the parties have negotiated for a number of years over the meaning of the term "process." (*See* Docket 1-3 at 5-6.) The parties clearly are in disagreement regarding the meaning of the term "process" and the statutes cited by Defendants do nothing to resolve that dispute. In fact, W. Va. Code § 11-13A-4(a)(1), cited by Defendants as defining "process," sets forth a number of "treatment processes" that are considered "mining" for tax purposes. Thus, that definition is inapplicable here. Likewise, *U.S. Steel Min. Co. v. Helton*, 631 S.E.2d 559, 564-65 (W. Va. 2005), and *Kanawha Eagle Coal, LLC v. Tax Com'r*, 609 S.E.2d 877 (W. Va. 2004), both cited by Defendants, define

---

[3] Further, *Hinkle* is distinguishable from the case at bar. In *Hinkle*, the insurance company sought arbitration regarding the amount of loss, however, the amount was specifically set forth by statute. 75 S.E. at 54. Thus, the insurance company could either pay that amount or deny coverage. There was no middle ground. Here, the underlying dispute concerns the definition of the term "process." That term, as evinced by the various cases and statutes cited by Defendants, is amenable to a number of definitions. Moreover, a fixed number, such as an amount of loss, is far less ambiguous than a verb, such as "process", that may have different meanings in different contexts.

"processing" in the context of taxation and are similarly inapplicable. The other definitions cited by Defendants are inclusive lists of the types of activities undertaken while processing coal. A plain reading of those definitions reveals that "processing" does not necessarily include all of the activities on the list, rather, "processing" would include one or more of those activities. Thus, these definitions do not create a blanket definition for all uses of the term "process." Accordingly, a determination of the definition of the term "process" will be left to the arbitration panel.[4]

### B. Failure to Join Georgia-Pacific

Defendants aver that Georgia-Pacific is an "indispensable party" in this action and Plaintiff's failure to join it should preclude this Court from compelling arbitration. Defendants contend that a potential arbitration ruling in favor of Plaintiff would adversely impact the rights of Georgia-Pacific, thus making Georgia-Pacific a necessary and indispensable party. In support of this claim, Defendants cite to the Fourth Circuit's decision in *Ranger Fuel Corp. v. Youghiogheny & Ohio Coal Co.*, 677 F.2d 378 (4th Cir. 1982). That case, however, is distinguishable from the case at bar. In *Ranger Fuel*, the plaintiff leased 31,000 acres of land from the defendant, Youghiogheny & Ohio Coal Company (Y&O), and Bellemead Coal Company (Bellemead), a non-party who jointly owned 7,000 of the 31,000 acres. *Id.* at 379. Y&O and Bellemead sued Ranger Fuel in state court in Ohio. Ranger Fuel then brought an action against only Y&O in federal district court in West Virginia, seeking to stay the Ohio suit and compel arbitration. *Id.* The Fourth Circuit found that Bellemead satisfied the criteria for feasible joinder under Rule 19(a) of the Federal Rules of Civil Procedure,

---

[4] Defendants also fail to address the requirement that any exercise of their rights under the agreement may not "unreasonably interfere" with Plaintiff's rights. A determination of whether Defendants' actions unreasonably interfere with Plaintiff's rights is surely a dispute suitable for arbitration.

but, because joinder would defeat diversity, the court held that the suit could not proceed without Bellemead "in equity and good conscience" under Rule 19(b). *Id.* at 380.

In the instant case, Georgia-Pacific does not meet the definition of a "necessary party." Under Rule 19(a),

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). When addressing Rule 19(a) in the context of an action to compel arbitration, the Second Circuit has held that a "district court can grant all the relief sought . . . – an order compelling arbitration – regardless of whether [all parties to the underlying dispute] are present." *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 446 (2d Cir. 1995). The relief that may be accorded here between Plaintiff and Defendants concerns only the arbitration clause, not the underlying lease. Thus, the Court can afford complete relief. Further, regarding the consideration of avoiding piecemeal litigation set forth in subsection (B), "the Supreme Court has categorically stated that the FAA requires courts to enforce an arbitration agreement 'notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.'" *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). Thus, Defendants'

claim that it and Georgia-Pacific may have to "relitigate these issues and their impact on the [coal mine lease] at a later date" is inapposite and will not support Defendants' position here. (Docket 11 at 10.)

Moreover, Georgia-Pacific has not claimed an interest in the instant litigation. Thus, it fails to satisfy Rule 19(a)'s "initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)). Not only has Georgia-Pacific itself failed to claim an interest, Defendants' attempts to claim an interest on behalf of Georgia-Pacific "fall outside the language of Rule 19(a)(2), and thus cannot be the basis for [compulsory joinder]." *ConnTech*, 102 F.3d at 682. Because Georgia-Pacific has no claimed interest in the instant litigation, the applicable standard under Rule 19(a) has not been met and the Court **FINDS** that Georgia-Pacific is not a necessary party.

Compulsory joinder is a two-step inquiry. Before dismissing a case for failure to join an indispensable party, the Court must examine: "(1) whether the party is 'necessary' to the action under Rule 19(a); and (2) whether the party is 'indispensable' under Rule 19(b)." *Am. Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (citation omitted). If a party is not "necessary," the inquiry ends there. *See* Fed R. Civ. P. 19(b) ("If a person who is required to be joined [under Rule 19(a)] cannot be joined . . . ."). "Only necessary [parties] can be indispensable[.]" *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1994). Thus, because Georgia-Pacific is not necessary, it cannot be indispensable and the Court declines to dismiss this case based on Plaintiff's failure to join it.

### C. *Scope of Arbitration Clause*

Defendants contend that, because the arbitration clause names only Georgia-Pacific and the individual lessee, the clause may not be enforced against parties not named therein. Although it is true that Defendants are not signatories to the surface lease, they are attempting to exercise their rights under the coal mine lease to force Plaintiff to process their coal. "A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Int'l Paper*, 206 F.3d at 418 (citations and quotation marks omitted). The instant case, for purposes of this issue, is indistinguishable from *Int'l Paper*. In both cases, the party refusing to arbitrate also seeks to enforce rights that are contained in a contract to which it is not a party. *See id*. The entire case "hinges on [the resisting party's] asserted rights under [that] contract." *Id.* Thus, because Defendants seek a direct benefit from the surface lease agreement, they are estopped from refusing to submit to arbitration as required by that agreement.

Moreover, although the Fourth Circuit did not determine whether a "close relationship" and claims "intimately founded in and intertwined with the underlying contract obligations" give rise to a basis for estoppel, the Eleventh Circuit has recognized such a basis. *Id.* at 418 n.6 (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)) (internal quotations omitted). Because the lease agreements refer to each other and confer rights and duties on both the surface lessee and coal mine lessee that are dependent on the co-tenant, the co-tenants maintain a close relationship and the contracts and claims are sufficiently founded in and intertwined with each other so as to give rise to a basis for estoppel. Thus, Defendants are estopped from denying the applicability of the arbitration clause under that theory as well.

## *IV. CONCLUSION*

For the reasons set forth above, Plaintiff's Motion to Compel Arbitration [Docket 9] is **GRANTED**. The parties are **ORDERED** to submit to arbitration in accordance with the terms set forth in the surface lease and coal mine lease executed by the parties and Georgia-Pacific on August 25, 1997. The case is hereby **STAYED** pending completion of the arbitration proceedings. The parties are **DIRECTED** to notify the Court, in writing, upon the completion of the arbitration proceedings, of the arbitration panel's decision.

**IT IS SO ORDERED**.

The Court further **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: October 2, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE